**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| VINCE MULLINS, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 13-CV-01829 |
| v. | ) ) | Hon. Charles R. Norgle, Sr. |
| DIRECT DIGITAL, LLC., a Delaware Corporation, | ) ) ) ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT**
**OF PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION**

# <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

I.      INTRODUCTION ................................................................................................ 1

II.     PROPOSED CLASS DEFINITION ................................................................... 3

III.    THIS CASE SATISFIES RULE 23 REQUIREMENTS .................................... 4

      A.    Plaintiff Satisfies the Rule 23(a) Prerequisites ...................................... 5

            1.    Numerosity is Satisfied .................................................................. 5

            2.    Commonality is Satisfied ............................................................... 5

            3.    Typicality is Satisfied .................................................................... 6

            4.    Adequacy of Representation is Satisfied ....................................... 7

      B.    The Rule 23(b)(2) Requirements are Satisfied ....................................... 7

      C.    The Requirements of Rule 23(b)(3) Are Satisfied .................................. 9

           1.    Predominance is Satisfied .............................................................. 9

                a.    The Joint Health Benefit Representations Are Uniform In Content and Across All Media ..................................... 9

                b.    The Veracity of Defendant's Joint Health Benefit Representations Are a Predominate Question and Can be Proven on a Classwide Basis .................................. 10

                c.    Causation Can Be Established On A Class-wide Basis ............... 14

                d.    The Court Can and Should Certify a Multi-State Class ............... 16

                e.    Relief Can Be Determined on a Classwide Basis ........................ 16

            2.    A Class Action Is The Far Superior Method Of Adjudication ................. 17

IV.     CONCLUSION .................................................................................................. 18

# <u>TABLE OF AUTHORITIES</u>

<u>PAGE</u>

**Cases**

*Acik v. I.C. Sys., Inc.*
251 F.R.D. 332 (N.D. Ill. 2008) ............................................................................. 5

*Alison v. Citgo Petroleum Corp.*
151 F.3d 402 (5th Cir. 1998) ............................................................................. 8

*Allen v. City of Chicago*
828 F. Supp. 543 (N.D. Ill. 1993) ............................................................................. 6

*Pella Corp. v. Saltzman*
606 F.3d 391, 7th Cir. 2010) ............................................................... 4, 6, 7, 16, 18

*Amchem Prods., Inc. v. Windsor*
521 U.S. 591 (1997) ............................................................................. 5

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*
133 S.Ct. 1184 (2013) ............................................................................. 5

*Boundas v. Abercrombie & Fitch Stores, Inc.*
280 F.R.D. 408 (N.D. Ill. 2012) ............................................................................. 4

*Butler v. Sears, Roebuck & Co.*
727 F.3d 796 (7th Cir. 2013) ............................................................................. 2, 17

*Buycks-Roberson v. Citibank Fed. Sav. Bank*
162 F.R.D. 322 (N.D. Ill. 1995) ............................................................................. 16

*Cel-Tech Commc'ns, Inc. v. LA Cellular Tel. Co.*
20 Cal. 4th 163 (1999) ............................................................................. 14

*Cima v. WellPoint Health Networks, Inc.*
250 F.R.D. 374 (S.D. Ill. 2008) ............................................................................. 7, 8

*Conn. Indem. Co. v. DER Travel Serv., Inc.,*
328 F.3d 347 (7th Cir. 2003) ............................................................................. 10

*Connick v. Suzuki Motor Co., Ltd.*
174 Ill. 2d 482 (1996) ............................................................................. 15

*Delarosa v. Boiron, Inc.*
275 F.R.D. 582 (C.D. Cal. 2011) ............................................................................. 8

*Edmondson v. Simon*
    86 F.R.D. 375 (N.D. Ill. 1980) ................................................................. 7

*F.T.C. v. Pantron I Corp.*
    33 F.3d 1088 (9th Cir. 1994) ................................................................. 14

*Garner v. Healy*
    184 F.R.D. 598 (N.D. Ill. 1999) ............................................................... 6

*Gordon v. Boden*
    224 Ill. App. 3d 195, (Ct. App. 1991) ..................................................... 16

*Group Health Plan, Inc. v. Philip Morris Inc.*
    621 N.W.2d 2 (2001) ........................................................................... 15

*Hinman v. M & M Rental Ctr., Inc.*
    545 F. Supp. 2d 802 (N.D. Ill. 2008) ....................................................... 7

*Hughes v. Kore of Indiana Enter., Inc.*
    731 F.3d 672 (7th Cir. 2013) ................................................................. 4

*In re Limberopoulos*
    02 C 5008, 2004 WL 528005 (N.D. Ill. Mar. 16, 2004) ......................... 14

*Kim v. Carter's Inc.*
    598 F.3d 362 (7th Cir. 2010) ................................................................. 8

*Klay v. Humana, Inc.*
    382 F.3d 1241 (11th Cir. 2004) ............................................................ 11

*Kwikset Corp. v. Super. Ct.*
    51 Cal. 4th 310 (2011) ....................................................................... 14

*Mulligan v. QVC, Inc.*
    888 N.E.2d 1190, (Ill. App. Ct. 2008) ................................................... 16

*Oliveira v. Amoco Oil Co.*
    201 Ill.2d 134, (2002) .................................................................... 6, 10

*Phillips Petroleum Co. v. Shutts*
    472 U.S. 797 (1985) ........................................................................... 16

*Pope v. Harvard Banchares, Inc.*
    240 F.R.D. 383 (N.D. Ill. 2006) ............................................................. 5

*Radmanovich v. Combined Ins. Co. of Am.*
   216 F.R.D. 424 (N.D. Ill. 2003) ................................................................................. 6

*Retired Chicago Police Ass'n v. City of Chicago*
   7 F.3d 584 (7th Cir. 1993) ....................................................................................... 5

*Rowe v. Bankers Life and Cas. Co.*
   No. 09-cv-491, 2012 WL 1068754 (N.D. Ill. Mar. 29 2012) ............................... 3, 15

*S37 Mgmt., Inc. v. Advance Refrigeration Co.*
   961 N.E. 2d 6, (Ct. App. 2011) .............................................................................. 16

*Sadler v. Midland Credit Mgmt., Inc.*,
   No. 06 C 5045, 2009 WL 901479 (N.D. Ill. Mar. 31, 2009) ..................................... 4

*Saltzman v. Pella Corp.*
   257 F.R.D. 471 (N.D. Ill. 2009) ("*Pella I*") ......................................................... 4, 6

*Smith v. Illinois Cent. R.R. Co.* ................................................................................. 5
   223 Ill.2d 441 (2006) ................................................................................................ 5

*Smith v. Nike Retail Servs., Inc.*,
   234 F.R.D. 648 (N.D. Ill. 2006) ............................................................................. 15

*Sun Oil Co. v. Wortman*
   486 U.S. 717 (1988) ................................................................................................ 16

*Tylka v. Gerber Prods. Co.*
   178 F.R.D. 493 (N.D. Ill. 1998) ............................................................................... 6

*Wal-Mart Stores, Inc. v. Dukes*
   131 S.Ct. 2541 (2011) ............................................................................................... 2

*Williams v. Chartwell Fin. Servs.*
   204 F.3d 748 (7th Cir. 2000) .................................................................................. 16

**Statutes**

Illinois Consumer Fraud and Deceptive Practices Act, 815 Ill. Comp. Stat. 502/1 ....................... 2

**Other Authorities**

Cal. Bus. & Prof. Code §17200 .................................................................................. 1

Fla. Stat. §501.201 ..................................................................................................... 1

Mass. Gen. Laws Ch. 93A ........................................................................................... 1

Mich. Comp. Laws §445.901 ................................................................................................ 1

Minn. Stat. §325F.67 .......................................................................................................... 1

Mo. Rev. Stat. §407.010 ..................................................................................................... 1

N.J. Stat. §56:8-1 ................................................................................................................ 1

N.Y. Gen. Bus. Law §349 ................................................................................................... 1

Wash. Rev. Code §19.86.010 .............................................................................................. 1

**Rule**

Fed. R. Civ. P. 23(a) ...................................................................................................... 1, 3, 5

Fed. R. Civ. P. 23(a)(1) ....................................................................................................... 5

Fed. R. Civ. P. 23(a)(4) ....................................................................................................... 7

Fed. R. Civ. P.23(b)(2) ................................................................................................ 1, 3, 7, 8

Fed. R. Civ. P.23(b)(3) .................................................................................................. 1, 3, 9

Fed. R. Civ. P. 23(c)(4)(B) .................................................................................................. 1

Rule 23(g)(1) ....................................................................................................................... 1

Plaintiff Vince Mullins respectfully submits this memorandum in support of his motion to certify a Multi-State Class under the laws of states similar to Illinois or, alternatively, to certify an Illinois-only Class under the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"), 815 Ill. Comp. Stat. 502/1, *et seq*., against Defendant Direct Digital, LLC.

## I. INTRODUCTION

In short, the common facts are these: Defendant's Instaflex Joint Support ("Instaflex" or the "Product") does not work. It is an expensive sugar pill that Defendant did not bother to have clinically tested despite the clinically tested representation on the Product package until **after** this lawsuit was filed. And, Defendant's after-the-fact, non-independent, seriously flawed and unreliable study showed Instaflex was no better than a placebo. Numerous other clinical studies confirm that glucosamine sulfate and the other ingredients in Instaflex do not provide the benefits represented. Plaintiff will prove this through evidence common to the Class.

More specifically, Defendant manufactures, markets, sells and distributes Instaflex. Dkt. No. 16, Def. Ans. ¶ 1. On the Product package, its website and all other advertising, Defendant represents that Instaflex will "Relieve Discomfort," "Improve Flexibility," "Increase Mobility" and "support cartilage repair". Ex. 1, Product Labels.[1] Defendant also represents that Instaflex is scientifically formulated and clinically tested (collectively, the "joint health benefit representations"). Def. Ans. ¶ 1. All of these representations are false.[2]

Plaintiff will present scientific evidence that the ingredients in Instaflex, including its primary active ingredient, glucosamine sulfate, do not provide the joint health benefits Defendant

---

[1] "Ex. __" references are to the Syverson Declaration.
[2] The issue presented by this Motion is not whether Defendant's joint health benefit representations are in fact false or deceptive (which are questions of fact to be resolved by the trier of fact), but whether their veracity is capable of being proved on a classwide basis. The answer to this question is a resounding "yes."

represents. This evidence will take the form of: (1) clinical studies that overwhelmingly demonstrate that none of the ingredients in Instaflex provides any joint health benefits; (2) internal documents reflecting Defendant's awareness that it did not have clinical support for the ingredients in Instaflex including a May 11, 2001 email by one of Defendant's founders acknowledging "we have not had studies conducted on our actual Products" (Ex. 2, Mullins 001800), and another email by Defendant's Chief Marketing Officer stating he felt "awkward about including it" (the "clinically tested" representation) (Ex. 3, Mullins 001064); and (3) an expert report by Dr. Thomas J. Schnitzer MD, PhD, of the Northwestern University Feinberg School of Medicine, who is one of the country's foremost experts in the field of joint relief remedies, that glucosamine sulfate and the other ingredients in Instaflex do not provide the joint health benefits Defendant represents and the one clinical study Defendant had performed on Instaflex after this lawsuit was filed, while seriously flawed and unreliable, actually demonstrates that Instaflex is no better than a placebo or a sugar pill. *See generally* Ex. 4, Schnitzer Report.[3]

Thus, the central issue in this case – whether Instaflex provides the represented joint health benefits – is a common, predominant question of fact, which by its very nature is equally applicable to every Class member and susceptible to classwide proof. As the Seventh Circuit recently held: "An issue 'central to the validity of each one of the claims' in a class action, if it can be resolved 'in one stroke,' can justify class treatment." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011)).

Further, the Court may properly infer that all Class members purchased the Product based on the joint health benefit representations. The false representations are uniformly made on all Product packages and the Instaflex webpage where consumers are necessarily exposed to them at

---

[3] The only "clinical testing" done on Instaflex was a study Defendant had initiated after Plaintiff filed his complaint – at the end of March 2013. Ex. 5, Mullins 002484.

the point-of-purchase. And, because the Product provides no other represented benefits, there is no reason for any consumer to buy Instaflex other than for joint health benefits. *See Rowe v. Bankers Life and Cas. Co.*, No. 09-cv-491, 2012 WL 1068754, at *11 (N.D. Ill. Mar. 29, 2012) (courts "willing to infer reliance and causation on a class-wide basis where potential class members have been subject to standardized misrepresentations because, in such a case, 'an individual plaintiff's receipt of and reliance upon the misrepresentation may then be [a] simpler matter [ ] to determine'").

Because the Product does not provide the represented joint health benefits or any other benefit, the monetary loss to each Class member is identical (the purchase price of the Product). As set forth in the expert report of economist Keith Reutter Ph.D. (Ex. 6), there are ample retail and wholesale Instaflex pricing data sources that can be used to calculate damages on a common classwide basis. *Id.* ¶ 6. And, because Defendant continues to make the false joint health benefit representations, a corrective label change and injunction will generally benefit the Class and further consumer protection.

For these reasons and those below, Plaintiff respectfully requests the Court certify this matter as a class action, designating him as Class Representative and appointing his counsel Stewart M. Weltman, LLC, Bonnett Fairbourn Friedman & Balint, P.C. and Siprut PC as Class Counsel.

## II. PROPOSED CLASS DEFINITION

Plaintiff seeks class certification under Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3) of a Multi-State Class or, alternatively, an Illinois-only Class:[4]

---

[4] Excluded from the proposed Classes are Defendant, its parents, subsidiaries, affiliates, officers and directors, and those who purchased Instaflex for resale.

**Multi-State Class**
> All consumers in Illinois and states with similar laws,[5] who purchased Instaflex within the applicable statute of limitations of the respective Class States, for personal use until the date notice is disseminated.

**Illinois-Only Class**
> All Illinois residents who purchased Instaflex, within the applicable statute of limitations, for personal use until the date notice is disseminated.

"While the class does not have to be so ascertainable that every potential member can be specifically identified at the commencement of the action, the description of the class must be sufficiently definite so that it is administratively feasible for the court to ascertain whether a particular individual is a member." *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 475-76 (N.D. Ill. 2009) ("*Pella I*"). The defined Classes are ascertainable as the definitions are precise and class membership can be determined by entirely objective means—if an individual purchased Instaflex in Illinois (or the Multi-State Class states) during the Class Period, they are a member of the class. *See, e.g.*, *Boundas v. Abercrombie & Fitch Stores, Inc.*, 280 F.R.D. 408, 417 (N.D. Ill. 2012); *Sadler v. Midland Credit Mgmt., Inc.*, No. 06 C 5045, 2009 WL 901479, at *2 (N.D. Ill. Mar. 31, 2009).

## III.     THIS CASE SATISFIES RULE 23 REQUIREMENTS

Consumer protection claims are ideal for class certification. *See, e.g.*, *Hughes v. Kore of Indiana Enter., Inc.*, 731 F.3d 672, 677 (7th Cir. 2013) ("A deeper question is whether a class action should be permitted when the stakes, both individual and aggregate, in a class action are so small—so likely to be swamped by the expense of litigation—as they are in this case. But we don't think smallness should be a bar. This is obvious when what is small is not the aggregate but the

---

[5] The Class States, which are those with similar consumer fraud laws under the facts of this case, include: California (Cal. Bus. & Prof. Code §17200, *et seq.*); Florida (Fla. Stat. §501.201, *et seq.*); Illinois (815 Ill. Comp. Stat. 502/1, *et seq.*); (Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws §445.901, *et seq.*); Minnesota (Minn. Stat. §325F.67, *et seq.*); Missouri (Mo. Rev. Stat. §407.010, *et seq.*); New Jersey (N.J. Stat. §56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law §349, *et seq.*); and Washington (Wash. Rev. Code §19.86.010, *et seq.*).

individual claim; indeed that's the type of case in which class action treatment is most needful."); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617(1997) (policy at core of class action mechanism is to permit adjudication of small recovery claims).

Class certification presents primarily a procedural issue. Merits questions may only be considered to the extent "they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S.Ct. 1184, 1195 (2013)); *see also Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598-99 (7th Cir. 1993); *Acik v. I.C. Sys., Inc.*, 251 F.R.D. 332, 334 (N.D. Ill. 2008).

### A.     Plaintiff Satisfies the Rule 23(a) Prerequisites

Plaintiff satisfies each of the Rule 23(a) prerequisites for class certification, referred to as: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy.

#### 1.     Numerosity is Satisfied

Rule 23(a)'s numerosity requirement is satisfied where "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). No specific number is required, nor is a plaintiff required to state the exact number of potential class members. *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006). Generally, where the membership of the proposed class is at least 40, joinder is impracticable and the numerosity requirement is met. *See Pope v. Harvard Banchares, Inc.*, 240 F.R.D. 383, 387 (N.D. Ill. 2006). Numerosity is satisfied here because Defendant admits that it markets and sells Instaflex to "tens of thousands of consumers nationwide, including in Illinois." Def. Ans. ¶ 12.

#### 2.     Commonality is Satisfied

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." "If 'at least one question of law or fact [is] common to the class,' then commonality is typically

found." *Tylka v. Gerber Prods. Co.*, 178 F.R.D. 493, 496 (N.D. Ill. 1998) (quoting *Allen v. City of Chicago*, 828 F. Supp. 543, 551 (N.D. Ill. 1993)); *see also Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010) ("*Pella II*"). Here, there are many common questions, chief among them are: (1) whether the scientific evidence is that glucosamine sulfate, and the other Instaflex ingredients, do not provide the joint health benefits represented on every package of Instaflex sold during the Class period, and (2) whether Defendant's packaging and advertising of its Product was likely to deceive the public. Commonality is satisfied.

### 3.    Typicality is Satisfied

Plaintiff satisfies the Rule 23(a)(3) typicality requirement because his claims arise from "the same course of conduct that gives rise to the claims of other class members and all of the claims are based on the same legal theory." *Pella I*, 257 F.R.D. at 479; *see also Radmanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 432 (N.D. Ill. 2003). Plaintiff and the proposed Class assert exactly the same claim arising from the same course of conduct—Defendant's deceptive and uniform joint health benefit representations found on every Instaflex package sold, on Defendant's website and in all Instaflex advertisements during the Class period. And Plaintiff, like every Class member, was injured at the point-of-sale when he paid money to purchase the Product. *See Garner v. Healy*, 184 F.R.D. 598, 604 (N.D. Ill. 1999) (finding typicality satisfied where the plaintiffs, like the class, purchased one or more of the defendant's non-wax products and "believed that they were getting something more than they ultimately received"); *see also Oliveira v. Amoco Oil Co.*, 201 Ill.2d 134, 164 (2002) (proximate cause analyzed at the point of purchase and question posed is whether at the time of purchase the plaintiff was deceived in "some manner").

### 4. Adequacy of Representation is Satisfied

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy is satisfied where the class representative "(1) has retained competent counsel, (2) has a sufficient interest in the outcome of the case to ensure vigorous advocacy, and (3) does not have interests antagonistic to those of the class." *Pella I*, 257 F.R.D. at 480; *Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 807 (N.D. Ill. 2008).

The interests of Plaintiff and the Class members are fully aligned in determining whether Defendant's joint health benefit representations were likely to deceive a reasonable consumer. Further, Plaintiff is well informed about the litigation, has and will continue to act in the best interests of the Class, and will participate in the litigation as needed. Ex. 7, Mullins Decl. ¶¶ 7-8. And, Plaintiff has retained counsel with significant experience in prosecuting class actions, including false advertising cases. Ex. 8 (firm resumes). Thus, the adequacy requirement is met.[6]

### B. The Rule 23(b)(2) Requirements are Satisfied

Pursuant to Rule 23(b)(2), a class action is properly certified where the party against whom the relief is sought "has acted or refused to act on grounds generally applicable to a class of persons, thereby making appropriate final injunctive relief . . . with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2); *see also Cima v. WellPoint Health Networks, Inc.*, 250 F.R.D. 374, 380 (S.D. Ill. 2008). "[T]he party opposing the class must have acted in a consistent manner toward members of the class so that [its] actions may be viewed as part of a pattern of activity." *F.T.C v. Simon*, 86 F.R.D. 375, 382-83 (N.D. Ill. 1980). However, "[a]ll the class members need not be aggrieved by or desire to challenge the defendant's conduct." *Id*.

---

[6] Rule 23(g)(1) also requires the Court to appoint Class Counsel. Plaintiff requests the Court appoint Stewart M. Weltman, LLC, Bonnett, Fairbourn, Friedman & Balint PC, and Siprut PC.

Plaintiff and the Class complain of a standard and uniform practice of false, misleading and deceptive advertising of Defendant's Instaflex that is generally applicable to the Class as a whole. Consequently, Plaintiff seeks a corrective label change and the ICFA expressly provides for the court, in its discretion, to order such relief. *See* 815 ILCS 505/10a(c). The labeling relief will provide an important consumer benefit both as to future purchases made by current Class members as well as new purchasers such that a Rule 23(b)(2) Class is properly certified. *See, e.g.*, *Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 591-92 (C.D. Cal. 2011) (finding that "should it be determined that Defendant misled consumers regarding the efficacy of Coldcalm, then an injunction prohibiting Defendant from selling Coldcalm with the misleading information would 'provide relief to each member of the class'") (citing *Dukes*, 131 S.Ct. at 2557).

The Seventh Circuit Court of Appeals recognizes that "the mere fact that a component of the relief sought in a class action is money damages does not automatically preclude class certification under Rule 23(b)(2)." *Cima*, 250 F.R.D. at 381. Especially where, as here, the requested monetary relief "flow[s] directly from liability to the class as a *whole* on the claims forming the basis of the injunctive or declaratory relief" is necessary to afford complete relief. *Alison v. Citgo Petroleum Corp.*, 151 F.3d 402, 41 (5th Cir. 1998) (emphasis in original; cited with approval in *Cima*). Further, the monetary relief will not "entail complex individualized determinations" as damages can be calculated using a common formulaic approach based on wholesale or retail sales data maintained by Defendant or available through a third-party such as Nielsen or IRI.[7] *Allison*, 151 F.3d at 414; *see also* Reutter Report at ¶¶ 6, 8-9; *see also infra* Section C(1)(e).

---

[7] Under ICFA, damages are the difference between the value of the product received and the price of the product. *See Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010).

### C.     The Requirements of Rule 23(b)(3) Are Satisfied

Under Rule 23(b)(3), certification is appropriate if: (i) common questions of law or fact predominate over questions affecting the individual class members only; and (ii) class treatment is superior to other methods available for adjudicating the controversy.

### 1.     Predominance is Satisfied

#### a.     The Joint Health Benefit Representations Are Uniform In Content and Across All Media

Defendant admits that each Instaflex product label contains the following language: "Instaflex is a revolutionary joint health formula that has been scientifically formulated to help relieve stiff, achy joints and support cartilage repair. Featuring an exclusive compound of eight key ingredients that have been clinically tested for maximum effectiveness." Def. Ans. ¶ 1. The following representative screen shot of the Product label demonstrates that in addition to the "scientifically formulated" and "clinically tested" representations, the Product label prominently represents that Instaflex will "Relieve Discomfort," "Improve Flexibility," "Increase Mobility" and "support cartilage repair":



Ex.1, Mullins 002997.

These same representations appear in Defendant's print advertising (Ex. 9, Mullins

003438), on its Web Site (https://www.instaflex.com/products/joint) and in its TV commercials (Exs. 10-12, Mullins 003519, 003344, 004691).[8]  For example, Defendant has Internet teasers found on various Advertising Partner web sites, where the reader is instructed to click a link to find out about a "shocking discovery" that will help relieve joint pain.  Exs. 14-16, Mullins 000177, 000179, 000181.  After clicking the link, the reader is directed to a web page for Instaflex, where the bottle and its joint health representations are prominently displayed.  Ex. 17, Mullins 004897, 004906 ("Direct Digital's internet advertising efforts are intentionally oriented toward attracting customers to a page where they can purchase products…").[9]  In short, no matter where a consumer first learns about Instaflex, the same joint health benefit message is driven home.  And, most important, this message is prominently and consistently communicated at the point-of-purchase whether in store on the Product's packaging or via the Internet at the Instaflex web page.

          **b.**    **The Veracity of Defendant's Joint Health Benefit Representations Are a Predominate Question and Can be Proven on a Classwide Basis**

Common issues unquestionably predominate in this litigation.  With respect to liability, the two overriding common questions are: (1) whether Defendant misrepresented that Instaflex is "scientifically formulated" and "clinically tested" to "relieve discomfort", "improve flexibility", "increase mobility" and "support cartilage repair", and (2) whether the misrepresentations are likely to deceive in some manner a reasonable consumer.  *Oliveira*, 201 Ill.2d at 155; *see also Conn. Indem. Co. v. DER Travel Serv., Inc.*, 328 F.3d 347, 350 (7th Cir. 2003).

The first is binary – either Defendant misrepresented that Instaflex provides joint health benefits or not.  If each Class member were to pursue their claim individually, the evidence,

---

[8] A screen shot of the current web site for Instaflex is attached as Ex. 13.

[9] ███████████████████████████████████████  Ex. 17, Mullins 004897, 004917.

including the science, necessary to support the individual claims would be identical in each case. *See Ramirez v. Palisades Collection LLC*, 250 F.R.D. 366, 373 (N.D. Ill. 2008) (in finding predominance was satisfied, court found that each of the common questions can be proven with class-wide "generalized evidence rather than individualized inquiries"); *see also Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004) ("If . . . the addition of more plaintiffs leaves the quantum of evidence introduced by the plaintiffs as a whole relatively undisturbed, then common issues are likely to predominate.").

To analyze and opine on the science, Plaintiff has engaged one of the country's foremost experts on joint health remedies, Dr. Schnitzer. For over three decades, Dr. Schnitzer has been involved in clinical research regarding osteoarthritis and musculoskeletal pain. Schnitzer Report ¶¶ 1-3. He has conducted research for major pharmaceutical companies on "all of the oral non-steroidal anti-inflammatory drugs (NSAIDs) that have been most recently developed (selective cox-2 inhibitors, such as Celecoxib and rofecoxib), many of the older NSAIDs (naproxen, ibuprofen, diclofenac, piroxicam and others) as well as topical agents (NSAIDs, capsaicin), intra-articular therapies (various hyaluronans, other agents) and other orally available analgesic agents, including acetaminophen and opioids." *Id.* ¶ 4. Dr. Schnitzer was also one of the investigators and co-authors of the most definitive clinical study on glucosamine – the GAIT study sponsored by the National Institute of Health. *Id.* ¶ 19.

Dr. Schnitzer divides Defendant's representations into two broad categories – (1) effects on joint structure (e.g., cartilage repair), and (2) pain and stiffness (e.g., mobility). *Id.* ¶ 7. Dr. Schnitzer notes that these "groups of symptoms [ ] are commonly considered to constitute the clinical condition of osteoarthritis" and osteoarthritis sufferers would appear to be the target population for this Product. *Id.* ¶ 8. Defendant's internal documents confirm Dr. Schnitzer's

observations. *See, e.g.*, Ex. 18, Mullins 00243 (print ad noting that Defendant is a "Sponsor of Arthritis Foundation"); Ex. 19, 001079 (new 2013 ad – "Sponsor of Arthritis Foundation"); Exs. 20-21, 001427, 001502 (internal document showing that the representations made by Defendant were intended to communicate arthritis treatment without mentioning the word); Ex. 22, 002491 (ads in "Arthritis Today"); and Exs. 23-24, 005934, 005935 (radio ad scripts mentioning arthritis).

Dr. Schnitzer notes that some early scientifically unsound studies[10] found positive results for glucosamine and contributed to the popularity of glucosamine products like Instaflex. Schnitzer Report ¶¶ 15-16. Also contributing to "the wide use of glucosamine-containing dietary supplements in general, and Instaflex™ in this case, for joint symptoms" is the profound placebo effect, which in the clinical setting of pain can be up to 50% or more. *Id.* ¶¶ 12-13.[11]

Once the products became widely used in the United States "they came under greater scrutiny by scientists and clinical investigators." *Id.* ¶ 16. Because of the lack of high quality studies, investigators initiated studies in the early 2000s to provide data "with which one could have greater confidence." *Id.* ¶ 17.[12] The results of these studies showed that glucosamine had no clinical benefit over placebo. *Id.* The largest of these trials, the GAIT trial sponsored by the NIH, concluded that glucosamine did not reduce pain. *Id.* ¶ 20.[13] A subsequent GAIT related study found that after 2 years, glucosamine was no better than placebo in preserving cartilage by slowing

---

[10] The "lack of confidence in the data was accepted within the scientific community at that time." Schnitzer Report ¶ 15.

[11] "Thus, it is of no surprise that an agent such as Instaflex™, when marketed with the representations made, would be perceived by many individuals as providing pain relief, just as a placebo would be." Schnitzer Report ¶ 13.

[12] While most studies focus on knee OA, they can be properly extrapolated to other sites in the body and "are considered as reasonable proxies for what might be expected in people having general musculoskeletal pain and discomfort." Schnitzer Report ¶ 25.

[13] An exploratory analysis of the data, not pre-specified but done post-hoc, suggested that it might be beneficial to those with moderate to severe OA, but a further two year follow-up study of that group found no evidence of benefit. Schnitzer Report ¶ 21.

down the narrowing of joint width space. *Id.* ¶¶ 22, 24.[14]  Numerous other high-quality studies and systematic reviews, including a recent large scale study performed on glucosamine sulfate,[15] have reached the same conclusion – glucosamine, the main active ingredient in Instaflex (by Defendant's own admission (Def. Ans. ¶ 16)), is no better than placebo in providing any joint health benefits.  Schnitzer Report ¶ 23.  And, neither are any of the other ingredients in Instaflex (MSM, white willow bark, ginger root extract, Boswellia serrata, turmeric extract, cayenne, and hyaluronic acid).  *Id.* ¶¶ 27-34.[16]

The 2013 "Clinical Study" Defendant commissioned after this lawsuit, upon applying the appropriate statistical and scientific analyses to the data, confirms that Instaflex is no better than placebo in relieving pain.  *Id.* ¶35.  Importantly, cartilage repair was not part of the study.  *Id.* ¶ 37.

And, Defendant's purported "support" for the joint health benefit representations found in a 2011 internal document (Ex. 25, Mullins 000053) does not "support a scientific basis for the selection of the constituents, either alone or in this particular combination, that are included in the Instaflex™ formulation." Schnitzer Report ¶ 39.  In fact, Defendant's internal document concedes that there is no evidence for the efficacy of white willow bark, cayenne, and hyaluronic acid.  *Id.* ¶ 40.  Indeed, because there are eight separate constituents, determining the optimal amount of each ingredient would be "impossible" requiring "thousands of clinical studies" such that, "[i]t is not conceivable that this could be done or that it was done" in contradiction to the "clinically

---

[14] Defendant goes much farther by representing that Instaflex will "repair cartilage."

[15] As Dr. Schnitzer notes, some of the studies have involved glucosamine hydrochloride while others have involved glucosamine sulfate but that, "it is well understood that both of these glucosamine salts, upon absorption, release equimolar amounts of glucosamine into the bloodstream.  Thus, results using either of these salts would be expected to produce similar clinical results."  Schnitzer Report ¶ 26.

[16] "In my opinion, none of these additional constituents provides any joint health benefits."  Schnitzer Report ¶ 27.

tested" and "scientifically formulated" label representations. *Id.* ¶ 41.

> As a result, Dr. Schnitzer opines:
>
> In conclusion, no single constituent contained in the Instaflex™ nutritional supplement has been shown to result in relief of joint symptoms or have any benefit for joint health. The only clinical study of Instaflex™ failed to show a statistically or clinically meaningful benefit for Instaflex™ compared to placebo. Therefore, it is my opinion that Instaflex™ will not have any benefit for people with joint pain or joint systems and is no better than a sugar pill/placebo.

*Id.* ¶ 42

By virtue of the foregoing, Plaintiff has made a substantial and credible showing of the overwhelming scientific evidence common to the Class that will be presented to resolve the common predominant issue – whether Defendant's joint health benefit representations are false and misleading.

c. **Causation Can Be Established On A Class-wide Basis**

The second predominate question of deception in some manner is an objective inquiry based on the materiality of the representations. *In re Limberopoulos*, 02 C 5008, 2004 WL 528005, at *2 (N.D. Ill. Mar. 16, 2004) (question of deception in some manner is objective inquiry based on materiality of representation); *see also F.T.C. v. Pantron I Corp.*, 33 F.3d 1088, 1095-96 (9th Cir. 1994) ("Express product claims are presumed to be material…");[17] *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 328 (2011) ("Simply stated: labels matter. The marketing industry is based on the premise that labels matter that consumers will choose one product over another similar product based on its label.").

There is no question that the joint health benefit representations are material such that a classwide inference of deception in some manner is appropriate because, other than the joint health

---

[17] The ICFA expressly provides that courts should refer to decisions involving Section 5 of the FTC Act (815 ILCS 505/2) and because the UCL was patterned after the FTC Act, decisions by federal courts construing the FTC Act "are more than ordinarily persuasive" in construing the UCL. *Cel-Tech Commc'ns, Inc. v. LA Cellular Tel. Co.*, 20 Cal. 4th 163, 185 (1999).

benefit representations, there is no reason for any consumer to purchase Instaflex. The Product is marketed for only one purpose – to provide joint health benefits, which it does not provide. *See Rowe*, 2012 WL 1068754, at *10-*11 (deception/causation established for class, through an inference of reliance, where (1) actions of class cannot be explained in any way other than reliance upon defendant's conduct and (2) class members all received or were exposed to uniform misrepresentations).

Importantly, it is well established that to succeed on a consumer protection claim under the ICFA (and the laws of the other 9 states in the proposed Multi-State Class), reliance is not required. *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill. 2d 482, 501 (1996) ("Plaintiff's reliance is not an element of statutory consumer fraud."). The Minnesota Supreme Court's discussion of this issue under Minnesota's similar consumer fraud statute is instructive. In *Group Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2 (2001), the court noted that to impose a requirement of individual reliance "in the guise of causation would reinstate the strict common law reliance standard" that the legislature intended to lower in statutory consumer fraud cases, and that the legislature did not intend to require this strict burden of proof "where the alleged misrepresentations are claimed to have affected a large number of consumers." *Id.* at 15. As such, the court concluded that only some "legal nexus" between the defendant's misrepresentations and the class' injuries is necessary and that this nexus "may be proven by means other than direct evidence of reliance by individual consumers." *Id.*

Here, the "legal nexus" is satisfied by the materiality of the representations and that no matter where a consumer looks (the package, print ads, web site, television) he or she necessarily is exposed to the uniform and prominent joint health misrepresentations. *See also Rowe*, 2012 WL 1068754, at *11; *Smith v. Illinois Cent. R.R. Co.*, 223 Ill.2d 441, 455-56 (2006) (consumer fraud

-15-

cases "where the plaintiffs suffered the same type of harm from essentially identical transactions" are appropriately certified as class actions); *S37 Mgmt., Inc. v. Advance Refrigeration Co.*, 961 N.E. 2d 6, 16 (Ct. App. 2011) (affirming certification of an ICFA class alleging defendant made uniform false representations); *Gordon v. Boden*, 224 Ill. App. 3d 195, 201 (Ct. App. 1991).

### d. <u>The Court Can and Should Certify a Multi-State Class</u>

Focusing on the particular facts and circumstances of this case, there are no "outcome determinative" differences between the laws of the ten states that Plaintiff seeks to certify as a class here – all have consumer protection laws that are materially identical to the IFCA. Ex. 26 (setting out the relevant laws in each of the 10 Class states); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) (multistate classes can be appropriate absent a showing by defendant of outcome determinative conflicts among the states); *Sun Oil Co. v. Wortman*, 486 U.S. 717 (1988) (same). Any non-outcome determinative differences that may exist do not defeat predominance and can be dealt with by sub-classing if necessary. *See Pella II*, 606 F.3d at 396 (finding certification of subclasses appropriate because "the consumer protection acts of these six states have nearly identical elements").[18]

### e. <u>Relief Can Be Determined on a Classwide Basis</u>

The measure of damages under the ICFA is the difference between the price paid for Instaflex and its value – here, zero because the only represented Product benefits are not and cannot be provided. *See Mulligan v. QVC, Inc.*, 888 N.E.2d 1190, 1196 (Ill. App. Ct. 2008) ("Illinois

---

[18] "Rule 23 specifically provides for multiple classes in a single case, Fed. R. Civ. P. 23(c)(4)(B), and classes have been certified in cases where multiple classes were required." *Pella I*, 257 F.R.D. at 477 (citing *Williams v. Chartwell Fin. Servs.*, 204 F.3d 748, 760 (7th Cir. 2000) (quotation marks omitted)). Therefore, this Court has the discretion to certify Plaintiff's proposed Multi-State Class as requested or, to satisfy any perceived manageability concerns, create state subclasses to avoid any possible conflicts of law. *See, e.g., Buycks-Roberson v. Citibank Fed. Sav. Bank*, 162 F.R.D. 322, 338 (N.D. Ill. 1995) (noting that "Rule 23(c)(4) empowers the Court to divide the class into subclasses" as appropriate). As Plaintiff does not seek to certify a national class – only a ten-state class – the laws of only a few jurisdictions apply, and those state laws can be easily grouped given their overall similarity. *Pella I*, 257 F.R.D. at 477.

courts have adopted the benefit-of-the-bargain rule . . . whereby damages are generally calculated by assessing the difference between the actual value of the property sold and the value the property would have had at the time of the sale if the representations had been true.").

In keeping with the applicable law, Plaintiff's damages expert, Keith A. Reutter, Ph.D., has opined that "there are economically reliable methods available to estimate Class-wide damages for the proposed Multi-State and Illinois-only classes using common proof and formulas." Reutter Report at ¶ 3. Using sales data produced by Defendant and, as necessary, obtained from independent sources that track and record retail sales data,[19] Dr. Reutter can calculate damages based on either the "Retail Method" or the "Wholesale Method." *Id.* ¶¶8-13. Both methods start with the total units sold in the states that are ultimately included in the Class multiplied by either the retail or wholesale price (as applicable) of each Instaflex Product. *Id.* ¶¶ 8, 11. Importantly, Class members' damages need not be identical. *See Butler*, 727 F.3d at 801 ("If the issues of liability are genuinely common issues, and the damages of individual class members can be readily determined [ ], the fact that damages are not identical across all class members should not preclude class certification. Otherwise defendants would be able to escape liability for tortious harms of enormous aggregate magnitude but so widely distributed as not to be remediable in individual suits.").

## 2.    A Class Action Is The Far Superior Method Of Adjudication

A class action is the superior method of adjudication because there are tens of thousands of Class members who bought Instaflex based on the uniform joint health benefit representations. Where, as here, there are common issues and the accuracy of the resolution of those issues "is

---

[19] Dr. Reutter noted that independent sources, such as Nielsen or IRI, will have information from which damages can be calculated. *See* Reutter Report at ¶¶6, 8-9. For example, Nielsen provides access to extensive consumer market information, including volume, pricing, promotion, and profit information. *See* http://www.nielsen.com/us.

unlikely to be enhanced by repeated proceedings, then it makes good sense, especially when the class is large, to resolve those issues in one fell swoop while leaving the remaining, claimant-specific issues to individual follow-on proceedings." *Pella II*, 606 F.3d at 394 (quotation marks and citations omitted).

      As the Seventh Circuit recently aptly explained:

> [T]he more claimants there are, the more likely a class action is to yield substantial economies in litigation. It would hardly be an improvement to have in lieu of this single class 17 million suits each seeking damages of $15 to $30.... The realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30 (emphasis in original). The present case is less extreme: tens of thousands of class members, each seeking damages of a few hundred dollars. But few members of such a class, considering the costs and distraction of litigation, would think so meager a prospect made suing worthwhile.

*Butler*, 727 F.3d at 801.

## IV.   <u>CONCLUSION</u>

      Because this case turns on the truth or falsity of Defendant's uniform joint health benefit misrepresentations, which will be proven or disproven by scientific evidence common to the Class, certification is warranted.  Accordingly, Plaintiff's Multi-State Class, or alternatively Illinois-only Class, should be certified, Plaintiff Mullins should be appointed Class Representative and the law firms of Stewart M. Weltman, LLC, Bonnett, Fairbourn, Friedman & Balint PC, and Siprut PC should be appointed Class Counsel.

Dated:  February 18, 2014           VINCE MULLINS, On Behalf Of Himself
                                    And All Others Similarly Situated,

                                By: _____
                                    One of the Attorneys for Plaintiff
                                    And the Proposed Putative Class

Joseph J. Siprut
*jsiprut@siprut.com*
Gregg M. Barbakoff
*gbarbakoff@siprut.com*
**SIPRUT** PC
17 N. State Street, Suite 1600
Chicago, Illinois 60602
312.236.0000
Fax: 312.470.6588

Stewart M. Weltman
*sweltman@weltmanlawfirm.com*
STEWART M. WELTMAN, LLC
53 W. Jackson Street, Suite 364
Chicago, IL 60604
312.588.5033
(Of Counsel LEVIN FISHBEIN SEDRAN
& BERMAN)

Elaine A. Ryan (AZ 012870)
*eryan@bffb.com*
Patricia N. Syverson (AZ 020191)
*psyverson@bfbb.com*
Lindsey M. Gomez-Gray (AZ 027416)
*lgomez-gray@bffb.com*
BONNETT, FAIRBORN, FRIEDMAN
& BALINT, PC
2325 E. Camelback Road, Suite 300
Phoenix, AZ 85016
602.274.1100
Fax: 602.274.1199

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing

**Memorandum In Support Of Plaintiff's Renewed Motion For Class Certification** was served

this 18th day of February, 2014, on the following individuals via U.S. Mail:

Ari Nicholas Rothman
*anrothman@venable.com*
Venable LLP
575 7th Street, NW
Washington, DC 20004
(202) 344-4220

_____

Joseph J. Siprut