**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| VINCE MULLINS, On Behalf of Himself and All Others Similarly Situated,<br><br>                Plaintiff,<br><br>     v.<br><br>DIRECT DIGITAL, LLC., a Delaware Limited Liability Company,<br><br>                Defendant. | Case No.:   1:13-cv-01829<br><br>CLASS ACTION<br><br>The Honorable Charles R. Norgle, Sr. |

**MEMORANDUM IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

PROCEDURAL HISTORY.................................................................................................... 4

THE PROPOSED SETTLEMENT........................................................................................ 5

    A.  The Settlement Class................................................................................................ 5

    B.  Class Counsel............................................................................................................ 5

    C.  Class Relief ............................................................................................................... 6

        1.  Monetary Relief ................................................................................................ 6

        2.  Injunctive Relief................................................................................................ 7

    D.  Incentive Award to Plaintiff/Class Representative .................................................. 8

    E.  Attorneys' Fees and Expenses .................................................................................. 8

    F.  Notice and Administration Costs .............................................................................. 8

A NATIONWIDE SETTLEMENT CLASS SHOULD BE CERTIFIED................................ 8

    A.  Numerosity – Federal Rule of Civil Procedure 23(a) ................................................ 9

    B.  Commonality – Federal Rule of Civil Procedure 23(a)(2) ...................................... 10

    C.  Typicality – Federal Rule of Civil Procedure 23(a)(3)............................................ 10

    D.  Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).................. 11

    E.  Requirements of Federal Rule of Civil Procedure 23(b)(3)........................................ 11

THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED AS FAIR,
ADEQUATE AND REASONABLE.................................................................................... 12

    A.  Relative Strength of Plaintiff's Claims .................................................................. 14

    B.  Complexity and Length of Continued Litigation.................................................... 15

    C.  Stage of Proceedings and Discovery Completed .................................................... 16

    D.  The Settlement Was Negotiated at Arm's Length .................................................. 16

THE FORM AND METHOD OF NOTICE TO THE CLASS MEMBERS
SHOULD BE APPROVED ................................................................................................ 17

CONCLUSION.................................................................................................................... 19

i

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

*Allen v. City of Chicago*

    828 F. Supp. 543 (N.D. Ill. 1993) ....................................................................10

*Amchem Prods. Inc. v. Windsor*

    521 U.S. 591 (1997).............................................................................8, 9, 12

*Armstrong v. Bd. of Sch. Directors of the City of Milwaukee*

    616 F.2d 305 (7th Cir. 1980) ....................................................................13, 14

*Butler v. Sears, Roebuck & Co.*

    Nos. 11-8029, 12-8030, 2012 WL 5476831 (7th Cir. Nov. 13, 2012) ..............12

*Cohen v. Chilcott*

    522 F. Supp. 2d 105 (D.D.C. 2005) ...............................................................18

*Cotton v. Hinton*

    559 F.2d 1326 (5th Cir. 1977) .......................................................................13

*De La Fuente v. Stokely-Van Camp., Inc.*

    713 F.2d 225 (7th Cir. 1983) ........................................................................10

*E.E.O.C. v. Hiram Walker & Sons*, Inc.

    768 F.2d 884 (7th Cir. 1985) ........................................................................13

*Felzen v. Adreas*

    134 F.3d 873 (7th Cir. 1998) ........................................................................13

*Fournigault v. Indep. One Mortg. Corp.*

    234 F.R.D. 641 (N.D. Ill. 2006).....................................................................11

*Freeman v. Berge*

    68 Fed. App'x 738 (7th Cir. 2003) ................................................................12

*Gaspar v. Linvatec Corp.*

    167 F.R.D. 51 (N.D. Ill. 1996).......................................................................10

**Page**

*Hinman v. M and M Rental Ctr., Inc.*

      545 F. Supp. 2d 802 (N.D. Ill. 2008) ..............................................................11

*In re AT&T Mobility*

      270 F.R.D. 330 (N.D. Ill. 2010) ...............................................................12, 14

*In re Checking Acct. Overdraft Litig.*

      275 F.R.D. 654 (S.D. Fla. 2011) ...............................................................16

*In re General Motors Pick-Up Truck Fuel Tank Prod. Liab. Litig.*

      55 F.3d 768 (3d Cir. 1995) ..........................................................................16

*In re Kentucky Grilled Chicken Coupon Mktg. & Sales Practices Litig.*

      280 F.R.D. 362 (N.D. Ill. 2011) ................................................................18

*In re Mexico Money Transfer Litig. (Western Union and Valuta)*

      164 F. Supp. 2d 1002 (N.D. Ill. 2000) .....................................................12

*In re Neopharm, Inc. Secs. Litig.*

      225 F.R.D. 563 (N.D. Ill. 2004) ...............................................................10

*Isby v. Bayh*

      75 F.3d 1191 (7th Cir. 1996) ...........................................................13, 14, 16

*Kaufman v. Am. Exp. Travel Related Servs. Co., Inc.*

      264 F.R.D. 438 (N.D. Ill. 2009) ...............................................................17, 18

*Levitan v. McCoy*

      No. 00-C5096, 2003 WL 1720047 (N.D. Ill. March 28, 2003) ..........................9

*Maxwell v. Arrow Fin. Servs., LLC*

      No 03 C 1995, 2004 WL 719278 (N.D. Ill. March 31, 2004) ..........................9

*Mirfasihi v. Fleet Mortg. Corp.*

      356 F.3d 781 (7th Cir. 2004) ........................................................................18

*Ortiz v. Fibreboard Corp.*

      527 U.S. 815 (1999) .........................................................................................8

**Page**

*Pope v. Harvard Banchares, Inc*.

    240 F.R.D. 383 (N.D. Ill. 2006) ........................................................................9

*Radmanovich v. Combined Ins. Co. of Am.*

    216 F.R.D. 424 (N.D. Ill. 2003) .......................................................................10

*Redman v. Radioshack Corp.*

    768 F.3d 622 (7th Cir. 2014) ..........................................................................17

*Rosario v. Livaditis*

    963 F.3d 1013 (7th Cir. 1992) .........................................................................10

*Saltzman v. Pella Corp.*

    257 F.R.D. 471 (N.D. Ill. 2009) .......................................................................10

*Smith v. Nike Retail Servs. Inc.*

    234 F.R.D. 648 (N.D. Ill. 2006) ........................................................................9

*Smith v. Sprint Communications Co., L.P.*

    37 F. 3d 612 (7th Cir. 2004) ...........................................................................12

*Synfuel Techs., Inc. v. DHS Express (USA), Inc.*

    463 F.3d 646 (7th Cir. 2006) ..........................................................................14

*Tylka v. Gerber Prods. Co.*

    178 F.R.D. 493 (N.D. Ill. 1998) .......................................................................10

*Wal-Mart Stores, Inc. v. Dukes*

    1313 S. Ct. 2541 (2011) ...................................................................................9

**Other Authorities**

F.R.A.P. 23(a) ...................................................................................................4

Fed. R. Civ. P. 23 ................................................................................1, 10, 11

Fed. R. Civ. P. 23(a) ......................................................................8, 9, 10, 11

Fed. R. Civ. P. 23(a)(1) ......................................................................................9

Fed. R. Civ. P. 23(a)(2) ....................................................................................10

**Page**

Fed. R. Civ. P. 23(a)(3)........................................................................................................10

Fed. R. Civ. P. 23(a)(4)........................................................................................................11

Fed. R. Civ. P. 23(b)(3)................................................................................................9, 11, 12

C.A. Wright, A. Miller & N. Kane, FEDERAL PRACTICE AND PROCEDURE § 1762 (2d ed. 1986)...9

MANUAL FOR COMPLEX LITIGATION, THIRD § 30.41 (1995) ....................................................14, 16

MANUAL FOR COMPLEX LITIGATION, § 21.632 (2004) ............................................................8, 14

3 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 7.20 (4th ed. 2001)..........9

4 Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS § 11.4§§1 (2002)...................16

Pursuant to Federal Rule of Civil Procedure 23, Plaintiff Vince Mullins, by his counsel Bonnett, Fairbourn, Friedman and Balint, P.C., Boodell & Domanskis, LLC, and Siprut, P.C., respectfully submits this Memorandum in Support of his Unopposed Motion for Preliminary Approval of Class Action Settlement, and moves for an Order: (1) preliminarily approving the March 1, 2017 Settlement Agreement attached hereto as Exhibit 1 as fair, reasonable, and adequate; (2) approving the Notice Plan attached as Exhibit1(A) to the Settlement Agreement; (3) setting the date and time of the Fairness Hearing; (4) provisionally certifying the Class under Rule 23 of the Federal Rules of Civil Procedure for settlement purposes only ("Settlement Class"); and (5) provisionally appointing Plaintiff as representative of the Settlement Class.

## INTRODUCTION

Plaintiff Vince Mullins and Defendant Direct Digital, LLC have made significant efforts to resolve this litigation through a nationwide class action settlement in an effort to obtain litigation repose. Through the extensive efforts of the Hon. Wayne R. Andersen, retired United States District Court Judge, as mediator, including an all-day mediation on February 25, 2015 and numerous emails and telephone conferences between the mediator and counsel for several months thereafter, the Parties have negotiated a settlement that provides significant economic redress to Class Members. The significant aspects of the Settlement include:

i.    Direct Digital will contribute $4,500,000 to a Settlement Fund which will be used to pay Class Member Cash Awards, Attorneys' Fee Awards, Incentive Awards, and Notice and Administration Costs up to $400,000. Direct Digital will pay separately all Notice and Administration Costs that exceed $400,000, subject to using up to $200,000 of the Net Settlement Fund[1] for costs that exceed $400,000 to the extent monies are available in the Net Settlement Fund after all claims are paid.

ii.   Direct Digital shall fund the Settlement Fund as follows: (a) $400,000 shall be deposited within 30 days of the Court's order preliminarily approving this

---

[1] "Net Settlement Fund" means the Settlement Fund, less the amounts paid in Attorneys' Fee Awards, Incentive Awards, and up to $400,000 in Notice and Administrative Costs.

Settlement Agreement for purposes of covering Notice and Administration Costs; (b) $1,100,000 shall be deposited by no later than April 5, 2017 or 30 days after the Court's order finally approving this Settlement Agreement becomes non-appealable, whichever is later; (c) $1,500,000 shall be deposited by no later than one year after the first $1,100,000 installment is made; and (d) $1,500,000 shall be deposited by no later than two years after the first installment is made. All payments will be made to the Settlement Administrator, and shall be held by the Settlement Administrator in an interest-bearing account until such time as counsel for both parties determine that the funds should be distributed. In the event that the Settlement Fund is not fully funded, then Plaintiff may elect to rescind the Settlement Agreement or seek to enforce it. Should Plaintiff choose to enforce the Settlement Agreement, Plaintiff shall be entitled to recover from Defendant all attorneys' fees and any expenses incurred in enforcing the Settlement Agreement.

iii. All Class Members will be entitled to $15.00 per Instaflex Joint Support ("Instaflex" or the "Product") bottle purchased, up to a maximum of seven (7) bottles per household (*i.e.*, $105 per household), with no requirement of proof of purchase, except that Settlement Class members who paid only shipping and handling for an Instaflex sample or trial and did not pay money to purchase any Instaflex Joint Support product shall receive $5.00. If payments exceed the monies in the Net Settlement Fund, payments will be reduced pro rata. If there are leftover monies in the Net Settlement Fund, and after payment of up to $200,000 in any excess notice and administration costs, payments to claimants, other than claimants who paid for only shipping and handling for an Instaflex sample or trial, will be increased *pro rata* up to a maximum of $60 for each bottle claimed. All other monies, if any, shall then be paid to The Arthritis Foundation (as a *cy pres* recipient).

iv.    Six (6) months after the Effective Final Judgment Date, Direct Digital will not make the following statements, or statements conveying the same messages, on Direct Digital's labels, packaging, promotional materials, websites, or other advertising media under Direct Digital's direct control pertaining to the formulation of Instaflex, or any other identical or substantially similar joint health product that contains glucosamine sulfate that it manufactures or offers for sale:

    a.  That the product provides joint support;

    b.  That the product was created by a research group including, without limitation, a Cambridge research group;

    c.  That the product was specially formulated;

    d.  That the product is a revolutionary formula;

    e.  That the product contains an exclusive compound;

    f.  That the product will have the following effect on cartilage, or a substantially similar effect: supporting, fixing, mending, reconditioning, rehabilitating, increasing, developing, building, maintaining, strengthening, repairing, rebuilding, renewing, regrowing, adding, regenerating, or rejuvenating; and

    g.  That the product supports, maintains, or improves joint health.

Direct Digital shall not be required to change or remove any claims on any packaging which exists as of the Effective Final Judgment Date. Direct Digital may make these claims in the future only if it becomes aware of studies or other scientific support for these claims, and after written notice to Plaintiff's counsel, is granted relief by the Court to change the labels accordingly.

v.    The Parties have agreed that the fairness hearing shall be held no earlier than twenty-one (21) days after the deadline for all Settlement Class members to opt-out or object, and no earlier than 100 days after the Motion for Preliminary Approval is filed.

3

## PROCEDURAL HISTORY

Direct Digital manufactures, markets, sells and distributes a dietary supplement containing glucosamine sulfate, sold under the name Instaflex Joint Support ("Instaflex" or the "product"). In 2013, Plaintiff filed this class action alleging that certain claims made on the Instaflex labeling and packaging are false, deceptive, and misleading. These claims were brought under various state consumer protection acts. On September 30, 2014, the Court granted Plaintiff's Motion for Class Certification certifying consumer classes in California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington. (D.E. 89, at 4.) Direct Digital sought and was granted a F.R.A.P. 23(a) hearing, and on July 28, 2015, the Seventh Circuit Court of Appeals affirmed the District Court's class certification order. (7th Cir. D.E. 26.) Defendant sought Certiorari before the United States Supreme Court and was denied on February 29, 2016. 136 S.Ct. 1161 (Feb. 29, 2016).

Thereafter, a settlement was reached. The Settlement Agreement was reached after an extensive examination of the facts and documents relating to this litigation, including documents produced by Direct Digital, responses to written discovery requests, third party discovery, and the deposition of Direct Digital's 30(b)(6) witness most knowledgeable regarding Instaflex's chemical composition, marketing and advertising, product development, any and all support for the Product representations, history of and changes to the Product labeling, and Product pricing and sales information. The Parties also engaged in motion practice with regard to Class Certification, which included expert disclosures, written reports, and depositions. The Settlement Agreement was reached after protracted, arm's-length negotiations over more than a year's time, including first a full-day mediation before the Hon. Wayne Andersen and then, over the ensuing year, through numerous telephonic and email communications between counsel for the Parties and Judge Andersen.

## THE PROPOSED SETTLEMENT

The proposed Settlement provides the following:

### A.  The Settlement Class

Plaintiff requests that the Court, for purposes of the Settlement only, certify a Settlement Class defined as:

> All persons who paid money to obtain Instaflex, for personal use and not for resale or distribution, including all persons who paid only shipping and handling for an Instaflex trial or sample.

> Excluded from the Settlement Class are: (i) Defendant; (ii) retailers of Instaflex; (iii) the parents, subsidiaries, affiliates, officers, and directors of (i) and (ii); (iv) those persons who submit valid requests for exclusion from the Settlement Class; and (v) any persons who purchased Instaflex and have already received a full refund.

### B.  Class Counsel

Pursuant to the Court's September 30, 2014 Class Certification Order, Class Counsel are:

> Elaine A. Ryan
> BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.
> 2325 E. Camelback Road, Suite 300
> Phoenix, Arizona 85016

> Max A. Stein
> BOODELL & DOMANSKIS, LLC
> One North Franklin, Suite 1200
> Chicago, Illinois 60606

> Stewart M. Weltman[2]
> SIPRUT, PC
> 17 North State Street, Suite 1600
> Chicago, Illinois 60602

/ / /

/ / /

/ / /

/ / /

---

[2] At the time of the Class Certification Order, Mr. Weltman was the owner of Stewart M. Weltman LLC and subsequently joined Boodell & Domanskis, LLC as Of Counsel on February 1, 2015. Thereafter, as of February 1, 2017, Mr. Weltman joined Siprut, P.C.

## C. Class Relief

3. <u>Monetary Relief</u>

Each Settlement Class Member shall be entitled to seek monetary compensation.[3]  Direct Digital is creating a Settlement Fund of $4.5 million, which will be used to pay cash awards to the Settlement Class Members, attorneys' fees and expenses as awarded by the Court, any incentive award to the Class Representative as awarded by the Court, and notice and administration costs up to $400,000.  After attorneys' fees and expenses, any incentive award, and notice and administration costs up to $400,000 are paid from the Settlement Fund, the balance will be available to the Class as the Net Settlement Fund.  (Settlement Agreement ¶ 5.)

From the Net Settlement Fund, Class Members will be entitled to receive $15.00 dollars per bottle of Instaflex purchased, up to a maximum of seven (7) bottles per household (*i.e.*, up to $105 per household), except that Settlement Class Members who paid only shipping and handling for an Instaflex sample or trial and did not pay money to purchase any Instaflex Joint Support product shall receive $5.00.  (Settlement Agreement ¶ 6.)  If these payments exceed the monies available in the Net Settlement Fund, payments will be reduced *pro rata.*  (*Id.*)  If there are leftover monies available in the Net Settlement Fund, after payment of up to $200,000 in any excess notice and administration costs, payments to claimants, other than claimants who paid only shipping and handling for an Instaflex sample or trial, will be increased *pro rata* up to a maximum of $60 for each bottle claimed.  (*Id.*)  All other monies, if any, shall then be paid *cy pres* to The Arthritis Foundation.  (*Id.*)

The claims process is simple.  Class Members will not be required to submit proof of purchase, but rather will be required only to submit a very simple claim form indicating the number of products for which they are making a claim, which can be submitted online or by mail and which does not require notarization.  The Claim Form is Exhibit 1(E) to the Settlement Agreement.

---

[3] As discussed below, the Settlement Class is estimated to be approximately 2,100,000 million Class members.

4. <u>Injunctive Relief</u>

The Settlement also requires that:

a.  Commencing after the Effective Final Judgment Date[4],  Direct Digital will not make the following statements, or statements conveying the same messages, on its packaging and labeling, or in promotional materials under Direct Digital's direct control, on product internet websites under its direct control, or in any other advertising media under its direct control, pertaining to the formulation of Instaflex or any other identical or substantially similar joint health benefit product it manufactures or offers for sale under any different product name: that the product provides joint support; that the product was created by a research group including, without limitation, a Cambridge research group; that the product was specially formulated; that the product is a revolutionary formula; or that the product contains an exclusive compound. (Settlement Agreement ¶ 7(a).);

b.  Direct Digital will refrain from making the following statements, or statements conveying the same message, pertaining to the product's effect on cartilage: supporting, fixing, mending, reconditioning, rehabilitating, increasing, developing, building, maintaining, strengthening, repairing, rebuilding, renewing, regrowing, adding, regenerating, or rejuvenating. (*Id.* at ¶ 7(b)); and

c.  Direct Digital will refrain from stating that the product supports, maintains, or improves joint health. (*Id.* at ¶ 7(c).)

d.  Direct Digital shall not be required to change or remove any claims on any packaging which exists as of the Effective Final Judgment Date. (*Id.* at ¶ 7(d).)

---

[4] The Effective Final Judgment Date shall be the later of: (a) the expiration of the time to appeal the Final Judgment and Order with no appeal having been filed; or (b) if any such appeal is filed, the termination of such appeal on terms that affirm the Final Judgment and Order or dismiss the appeal with no material modification of the Final Judgment and Order; and (c) the expiration of the time to obtain any further appellate review of the Final Judgment and Order.  (Settlement Agreement p.5 n.2.)

e. Direct Digital may make these claims in the future only if it becomes aware of studies or other scientific support for these claims, and after written notice to Plaintiff's counsel, is granted relief by the Court to change the labels accordingly. (*Id.* at ¶¶ 7(f) and (g).)

**D. Incentive Award to Plaintiff/Class Representative**

Any Incentive Award to Plaintiff awarded by the Court shall not exceed $5,000 and will be paid from the Settlement Fund. (*Id.* at ¶ 9.)

**E. Attorneys' Fees and Expenses**

Attorneys' fees and expenses that are awarded by the Court will be paid from the Settlement Fund. (*Id.* at ¶ 8.) Plaintiff and his counsel will petition the Court for an award of attorneys' fees and costs, not to exceed 33% of the Settlement Fund (or $1,485,000).

**F. Notice and Administration Costs**

Notice and Administration costs up to $400,000 are to be paid from the Settlement Fund. (*Id.* at ¶¶ 5, 10.) Direct Digital will separately pay any notice and administration costs that exceed $400,000, subject to using up to $200,000 of the Net Settlement Fund for costs that exceed $400,000 to the extent monies are available in the Net Settlement Fund after all claims are paid. (*Id.* at ¶¶ 5, 10.)

**A NATIONWIDE SETTLEMENT CLASS SHOULD BE CERTIFIED**

Before preliminary approval of a class action settlement can be granted, the Court must determine that the proposed class is appropriate for certification. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997); MANUAL FOR COMPLEX LITIGATION, § 21.632, at 320–21 (2004). *See also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 828 n.6 (1999). Federal Rule of Civil Procedure 23(a) provides that a class may be certified if (i) the class is so numerous that joinder of all members is impractical, (ii) there are questions of law or fact common to the class, (iii) the claims or defenses of the representative parties are typical of those of the class, and (iv) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P.

8

23(a).  Once the requirements of Rule 23(a) have been met, the proposed class must then satisfy at least one of the three subsections of Rule 23(b).  *Amchem*, 521 U.S. at 614.

In this case, the Court has already determined that the requirements of Rule 23(a) and (b) have been met and thus that certification of a multi-state class is appropriate.  The Seventh Circuit Court of Appeals affirmed.  Plaintiff now seeks certification of a nationwide Settlement Class under Rule 23(b)(3).  As discussed further below, the proposed nationwide Settlement Class meets each of the requirements of Rules 23(a) and (b)(3), and therefore, certification is appropriate.

### F.  Numerosity – Federal Rule of Civil Procedure 23(a)

The first requirement of Rule 23(a) – numerosity – is satisfied where "the class is so numerous that joinder of all members is impractical."  Fed. R. Civ. P. 23(a)(1).  No specific number is required, nor is a plaintiff required to state the exact number of potential class members.  *Smith v. Nike Retail Servs. Inc.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006).  *See also* 3 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 7.20, at 66 (4th ed. 2001).  Instead, courts are permitted to "make common-sense assumptions that support a finding of numerosity."  *Maxwell v. Arrow Fin. Servs., LLC*, no 03 C 1995, 2004 WL 719278, at *2 (N.D. Ill. March 31, 2004).  Generally, where the membership of the proposed class is at least 40, joinder is impracticable and the numerosity requirement is met.  *Pope v. Harvard Banchares, Inc*., 240 F.R.D. 383, 387 (N.D. Ill. 2006).  The requirement that joinder be impracticable does not mean that joinder is impossible.  Rather, it need only be "extremely difficult or inconvenient to join all members of the class."  *Levitan v. McCoy*, No. 00-C5096, 2003 WL 1720047, at *3 (N.D. Ill. March 28, 2003) (quoting C.A. Wright, A. Miller & N. Kane, FEDERAL PRACTICE AND PROCEDURE § 1762, at 159 (2d ed. 1986).

Here, as the Court previously noted in certifying a multi-state class, "Defendant concedes that it has sold Instaflex to thousands of consumers across the nation, thus 'there are in fact sufficiently numerous parties' to certify a class."  (Dkt. No. 89, Order re: Plaintiff's Renewed Motion for Class Certification, at 3 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 1313 S. Ct. 2541, 2551 (2011)).  Accordingly, the Settlement Class satisfies the numerosity requirement.

### G. Commonality – Federal Rule of Civil Procedure 23(a)(2)

Rule 23(a)'s commonality element requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality exists if a common nucleus of operative fact exists. *Rosario v. Livaditis*, 963 F.3d 1013, 1017 (7th Cir. 1992); *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 478 (N.D. Ill. 2009). "The fact that there is some factual variation among the class grievances will not defeat a class action." *Rosario*, 963 F.3d at 1017. "If 'at least one question of law or fact [is] common to the class,' then commonality is typically found." *Tylka v. Gerber Prods. Co.*, 178 F.R.D. 493, 496 (N.D. Ill. 1998) (quoting *Allen v. City of Chicago*, 828 F. Supp. 543, 551 (N.D. Ill. 1993)).

Here, as discussed by the Court in its February 18, 2014 Order, there are many common questions of law and fact, including "whether the ingredients of Instaflex provide any health benefits to a person's joints and whether Instaflex's labeling deceives the public consumer." (Dkt. No. 89, at 3.) Thus, commonality is satisfied.

### H. Typicality – Federal Rule of Civil Procedure 23(a)(3)

Rule 23 also requires that a plaintiff's claims be typical of other class members' claims. Fed. R. Civ. P. 23(a)(3). "The issue of typicality is closely related to commonality and should be liberally construed." *Pella*, 257 F.R.D. at 479. Typicality is satisfied if the plaintiff's claims arise from "the same course of conduct that gives rise to the claims of other class members and all of the claims are based on the same legal theory." *Id. See also Radmanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 432 (N.D. Ill. 2003) (internal quotations omitted). The existence of factual differences will not preclude a finding of typicality. *Id. See also De La Fuente v. Stokely-Van Camp., Inc.*, 713 F.2d 225, 232 (7th Cir. 1983); *In re Neopharm, Inc. Secs. Litig.*, 225 F.R.D. 563, 566 (N.D. Ill. 2004) ("Typicality does not mean identical …") (citing *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D. Ill. 1996)).

Here, in certifying the multi-state class the Court found that: "Plaintiff claims that he relied on Instaflex's label when he purchased it and he received no benefit after using it. His claim is based on Illinois' and other states' consumer protection statutes. This is the same course of

10

conduct and same legal theory that would be typical for the other class members …." (Dkt. No. 89, at 3.) This finding is equally applicable to a nationwide class. Accordingly, Plaintiff's claims are typical of the other Settlement Class Members' claims.

## I. Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4)

The final Rule 23(a) prerequisite requires that a proposed class representative "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement is satisfied where the class representative "(1) has retained competent counsel, (2) has sufficient interest in the outcome of the case to ensure vigorous advocacy, and (3) does not have interests antagonistic to those of the class." *Pella*, 257 F.R.D. at 480. *See also Hinman v. M and M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 807 (N.D. Ill. 2008).

Here, the interests of Plaintiff and other Settlement Class members are fully aligned in determining whether Defendant's joint health benefit representations were likely to deceive a reasonable consumer. Further, Plaintiff has retained counsel the Court has already found to be experienced and qualified (Dkt. No. 89, at 3) and they have no interests antagonistic to those of the Settlement Class. Thus, Plaintiff will fairly and adequately protect the interests of the Settlement Class, and Rule 23's adequacy requirement is met.

## J. Requirements of Federal Rule of Civil Procedure 23(b)(3)

In addition to the four requirements of Fed. R. Civ. P. 23(a), Plaintiff must also satisfy one of the three requirements of Rule 23(b). Here, Plaintiff seeks certification under Rule 23(b)(3), and thus must show "that the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "'Considerable overlap exists between the court's determination of commonality and a finding of predominance. A finding of commonality will likely satisfy a finding of predominance because, like commonality, predominance is found where there exists a common nucleus of operative facts.'" *Pella*, 257 F.R.D. at 484 (quoting *Fournigault v. Indep. One Mortg. Corp.*, 234 F.R.D. 641, 644 (N.D. Ill. 2006)). The predominance requirement "trains on the legal or factual questions

11

that qualify each class member's case as a genuine controversy" and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. Inc.*, 521 U.S. at 623. Predominance is a question of efficiency. Where, as here, Defendant's alleged wrong may have "imposed costs on tens of thousands of consumers yet not a cost to any one of them large enough to justify the expense of an individual suit", a class action is "the more efficient procedure for determining liability and damages." *Butler v. Sears, Roebuck & Co.*, Nos. 11-8029, 12-8030, 2012 WL 5476831, at *2 (7th Cir. Nov. 13, 2012).

Here, "Plaintiff[] claim[s] that Defendant[] engaged in standardized conduct that violated laws that are common [to the Settlement Class], and the class … will therefore be cohesive." *In re AT&T Mobility*, 270 F.R.D. 330, 345 (N.D. Ill. 2010) (citing *Amhem Prods. Inc*., 521 U.S. at 623). Common questions predominate here because Defendant's alleged unlawful conduct is identical with regard to all members of the proposed Settlement Class. Thus, the predominance and superiority requirements are satisfied because liability and damages would have been decided predominantly, if not entirely, based on common evidence and Plaintiff and the Settlement Class share a common grievance against Defendant. *In re Mexico Money Transfer Litig. (Western Union and Valuta)*, 164 F. Supp. 2d 1002, 1013 (N.D. Ill. 2000). Further, a class action is superior here, where Defendant sold Instaflex to thousands of consumers nationwide, but each individual Settlement Class Member paid an amount too small to justify the expense of an individual suit. Finally, because a settlement class is sought here, the Court need not inquire whether the case, if tried, would present manageability problems. *Smith v. Sprint Communications Co., L.P.*, 37 F. 3d 612, 614 (7th Cir. 2004) (quoting *Amchem Prods. Inc.*, 521 U.S. at 591). Furthermore, the Court has certified a litigation class here pursuant to Rule 23(b)(3), reflecting that common questions predominate.

## THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED AS FAIR, ADEQUATE, AND REASONABLE

The Seventh Circuit has repeatedly recognized the overriding public interest in settling litigation. *See, e.g.*, *Freeman v. Berge*, 68 Fed. App'x 738, 741 (7th Cir. 2003). This is

12

particularly true in class action litigation. *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation.") (citing *E.E.O.C. v. Hiram Walker & Sons*, Inc., 768 F.2d 884, 888-89 (7th Cir. 1985) (noting that there is a general policy favoring voluntary settlements of class action disputes), *cert. denied*, 478 U.S. 1004 (1986)); *Armstrong v. Bd. of Sch. Directors of the City of Milwaukee*, 616 F.2d 305, 312 (7th Cir. 1980) ("It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement."), *overruled on other grounds*, *Felzen v. Adreas*, 134 F.3d 873 (7th Cir. 1998). Class action settlements minimize the litigation expenses of the parties and reduce the strain such litigation imposes upon already scarce judicial resources. *Armstrong*, 616 F.2d at 313 (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)).

> The Seventh Circuit has held:

> District court review of a class action settlement proposal is a two-step process. The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." This hearing is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing. If the district court finds a settlement proposal "within the range of possible approval," it then proceeds to the second step in the review process, the fairness hearing. Class members are notified of the proposed settlement and of the fairness hearing at which they and all interested parties have an opportunity to be heard.

*Armstrong*, 616 F.2d at 314 (internal citation and footnote omitted).

Thus, the central issue facing the Court at this stage is whether the proposed settlement falls within the range of what ultimately might be approved as fair, reasonable, and adequate, so as to justify providing notice to the Class and scheduling a final hearing. *Id.* The Court is not required at this juncture to make a final determination that the Settlement is fair, reasonable, and adequate, nor will any Class members' substantive rights be prejudiced by preliminary approval. "If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies … and appears to fall within the range of possible approval,"

the Court should grant preliminary approval and direct notice and schedule a final approval hearing. MANUAL FOR COMPLEX LITIGATION, THIRD § 30.41, at 237 (1995).[5]

When deciding whether to preliminarily approve a settlement, district courts in this Circuit consider five factors: "(1) the strength of plaintiffs' case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among effected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed." *In re AT&T Mobility*, 270 F.R.D. 330, 336 (N.D. Ill. 2010) (citing *Synfuel Techs., Inc. v. DHS Express (USA), Inc*., 463 F.3d 646, 653 (7th Cir. 2006)).[6] A reviewing court "do[es] not focus on individual components of settlements, but rather view[s] them in their entirety in evaluating their fairness," and considers the facts "in the light most favorable to the settlement." *Armstrong*, 616 F.2d at 315.

### E. Relative Strength of Plaintiff's Claims

The Seventh Circuit has often stated that the first factor (*i.e.*, the relative strength of plaintiffs' case on the merits as compared to what the defendants offer by way of settlement) "is the most important consideration." *Isby*, 75 F.3d at 1199 (citation omitted). Here, the Settlement Agreement strikes a compromise that affords fair recompense to Class Members. The Settlement permits all persons who paid money for Instaflex Joint Support – even those without proof of purchase – to obtain compensation for approximately 21% of their purchase price for up to seven

---

[5] The MANUAL FOR COMPLEX LITIGATION at § 21.632 sets forth the procedures for preliminary approval of settlements:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of an in opposition to the settlement.

[6] *See also* Newberg, at § 11.41 (The initial presumption of fairness of a class settlement may be established by showing: (1) that the settlement has been arrived at by arm's length bargaining; (2) that sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently; and (3) that the proponents of the settlement are counsel experienced in similar litigation.).

(7) purchases by completing a simple claim form indicating the number of qualified purchases. And, the notice plan is robust, having an anticipated reach of 70-75% of Class Members. (Declaration of Gina Intrepido-Bowden on Settlement Notice Plan ("Intrepido-Bowden Decl."), at ¶ 4.)

The Settlement Agreement also provides for meaningful and significant injunctive relief in the form of labeling changes. All representations regarding the Product's ability to rebuild cartilage will be entirely eliminated in any form from the Instaflex label. Also to be eliminated are representations that the product provides joint support or supports, maintains or improves joint health. And, Direct Digital may no longer represent the product as special, revolutionary or exclusively formulated. This will require Direct Digital to refrain from making key marketing messages conveyed about glucosamine products until such time, if ever, Direct Digital becomes aware of additional evidence substantiating any of the prohibited representations and obtains Court approval to reinstate them.

To be clear, Plaintiff believes that his claims are meritorious and is confident that he would prevail on the merits, but candidly acknowledges that there are significant hurdles to obtaining a judgment for the full value of the Class' claims. For example, Plaintiff's claims, on the merits, will be subject to a "battle of the experts", there is always the risk that a jury could side with Direct Digital's experts, and while Plaintiff believes that the weight of the scientific evidence is in his favor, as with any trial there is a risk that the jury would side with Defendant.

Given the foregoing, the payment of $4.5 million by Direct Digital is certainly within the range of reasonable settlement outcomes.

### F. Complexity and Length of Continued Litigation

Further litigation will require additional discovery as to the merits of the claims, including additional expert disclosures and depositions of experts. This matter is expert-intensive, because much of the proof of Direct Digital's liability is dependent upon expert testimony. There will be extensive motion practice, including likely summary judgment motions and appellate practice. This is undoubtedly a complex case, and continued litigation will come at considerable expense to

Plaintiff and Direct Digital, and at significant expense of the limited resources of the Court. Here, as in *Isby*, continued litigation would require resolution of complex issues at considerable expense and would absorb many days of trial time.

### G. Stage of Proceedings and Discovery Completed

Sufficient discovery was had to enable the Parties to engage in meaningful settlement negotiations. Full class discovery and briefing has already been completed and class certification was achieved. And, the Court's Order certifying the Class was appealed to the Seventh Circuit where it was affirmed. The Parties have engaged in sufficient discovery related to the merits (fact and expert) and to the class certification issues to present them with a very balanced and knowing view of settlement.

### H. The Settlement Was Negotiated at Arm's Length

There is an initial presumption of fairness because the settlement is the product of arm's length negotiations conducted by experienced counsel who are fully familiar with all aspects of class action litigation. *In re General Motors Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) ("This preliminary determination establishes an initial presumption of fairness when the court finds that: (1) the negotiations occurred at arm's length … [and] (3) the proponents of the settlement are experienced in similar litigation …."), *cert. denied*, 516 U.S. 824 (1995); *see also* 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 11.4§§1 at 90 (2002); MANUAL FOR COMPLEX LITIGATION (THIRD) 30.42 (1995); *In re Checking Acct. Overdraft Litig.*, 275 F.R.D. 654, 662 (S.D. Fla. 2011).

On February 25, 2015, the Parties took part in an all-day mediation led by Hon. Wayne R. Andersen. Thereafter, numerous telephonic conferences were conducted and emails exchanged between counsel and the mediator before reaching a final agreement on March 1, 2017. Judge Andersen has submitted a declaration attesting to the hard-fought nature of the mediation and the strong adversarial positions taken by both sides. (Exhibit 2, hereto.)

### THE FORM AND METHOD OF NOTICE TO THE CLASS MEMBERS
### SHOULD BE APPROVED

The proposed Notice Plan is fully compliant with due process in that it informs Class Members of their right to opt-out or exclude themselves from the settlement, appear through their own counsel, object to the terms of the settlement along with the form that the objection must take, the deadlines for opt-out/exclusion or objection, the date of the final approval hearing, the scope of the claims released if a Class Member does not opt-out and remains in the Class, and the potential amount of Plaintiff's incentive award and Class Counsel fees and expense awards. *See, e.g.*, *Kaufman v. Am. Exp. Travel Related Servs. Co., Inc*., 264 F.R.D. 438, 445-46 (N.D. Ill. 2009). Additionally, Class Counsel will file their application for attorneys' fees and costs three weeks (21 days) prior to the deadline for Class Members to object to the Settlement (and their application will be posted on the settlement website), thereby unquestionably satisfying Rule 23(h) and *Redman v. Radioshack Corp.*, 768 F.3d 622, 638 (7th Cir. 2014).

The proposed Settlement Class is comprised of approximately 2,100,000 Class members. *See* Notice Plan, Exhibit 1(A). KCC LLC ("KCC"),[7] will serve as the third-party Settlement Administrator. The proposed Notice Plan consists of direct notice to Settlement Class Members capable of identification (estimated to be at least 71% of the Settlement Class), as well as publication notice. In cases involving labeling consumer fraud classes, the identity of individual class members typically cannot readily be ascertained and publication notice is the only means of informing Settlement Class Members of the existence of the Settlement and its terms. But this is not the case here for almost 71% of the Class as those Class members will receive direct communication of the notice. *Id.* at ¶¶ 17-18.

The media part of the Notice Plan is based upon an analysis of print publication and the potential internet usage by consumers who may have purchased a glucosamine product. Exhibit 3, Intrepido-Bowden Decl., at ¶¶ 13-16. Based upon KCC's analysis of publications likely to reach the target audience, two national magazines were chosen for publication notice: *Arthritis Today*

---

[7] http://www.kccllc.com/.

and *People*. *Id* at ¶¶ 19-20. In addition to print notice, Internet Banner Notices will be utilized by focusing on individuals who have shown an interest in health, as well as search for keywords "joint pain" and "glucosamine." *Id* at ¶¶ 21-22. The Internet Banners will include an embedded link to the KCC settlement website for this case. *Id*. at ¶23.

In *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 786 (7th Cir. 2004), the Seventh Circuit approved a publication notice for a nationwide class that consisted of publication in one publication of national circulation and the posting of the notice on a website set up by a settlement administrator. *See also Kaufman*, 264 F.R.D. at 446 (Publication of notice in "a national newspaper of wide circulation, plus an online publication, constitutes sufficient notice by publication.") (citing *Misfasihi*); *Cohen v. Chilcott*, 522 F. Supp. 2d 105 (D.D.C. 2005) (approving notice plan consisting of publication in USA Today and an Internet campaign targeted to the demographics of the class members); *In re Kentucky Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, 280 F.R.D. 362 (N.D. Ill. 2011) (approving of notice plan consisting of publication in Parade, internet advertising, the maintenance of a website containing the notice, and targeted on-line advertising and sponsored key-word search advertisements.)

Here, the Notice Plan goes far beyond the minimum requirements. Persons capable of being readily identified and receiving direct notice will receive such notice, and for those who are not capable of being identified, the plan provides for publications in two national magazines, as well as targeted internet banners.

The Notice Plan also constitutes a robust means of providing notice of the Settlement to the Class, as it is expected to reach 70-75% of the target audience. *Id* at ¶ 4.

Finally, the amount of money set aside for notice and settlement administration is significant, with Direct Digital agreeing to separately pay for any costs that exceed the $400,000 to be paid out of the Settlement Fund for Notice and Administration subject to using up to $200,000 of the Net Settlement Fund for costs that exceed $400,000 only to the extent monies are available in the Net Settlement Fund after all claims are paid.

## CONCLUSION

Based upon the foregoing, and because the proposed Settlement is fair, reasonable, and adequate and falls within the range of what might ultimately be approved, Plaintiff respectfully requests that the Court enter the preliminary approval order that accompanies this motion and memorandum as Exhibit G to the Settlement Agreement.

Dated March 3, 2017

*s/Stewart M. Weltman*

Stewart M. Weltman
Joseph J. Siprut
Gregg M. Barbakoff
**Siprut PC**
17 North State Street, Suite 1600
Chicago, IL 60602
sweltman@siprut.com
jsiprut@siprut.com
gbarbakoff@siprut.com
Tel: (312) 236-0000

Max A. Stein
**Boodell & Domanskis, LLC**
Chicago, IL 60654
mstein@boodlaw.com
Tel: (312) 300-5533

Elaine Ryan
**Bonnett, Fairbourn, Friedman & Balint, PC**
2325 E. Camelback Road, Suite 300
Phoenix, AZ 85016
eryan@bffb.com
Tel: (602) 274-1100

Patricia N. Syverson
Bonnett, Fairbourn, Friedman & Balint, PC
**600 West Broadway, Ste. 900**
San Diego, CA 92101
psyverson@bffb.com
Tel: (619) 798-4593

*Counsel for Plaintiff Vince Mullins*

19

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3rd day of March 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing documents is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic filing.

*s/ Stewart M. Weltman*